IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2015 AUG 13  PM 4: 32

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
DEPUTY

| | | |
|---|---|---|
| REACTIVE SURFACES LTD, LLP, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CAUSE NO. 1:14-CV-1009-LY |
| | § | |
| TOYOTA MOTOR CORPORATION, | § | |
| DEFENDANT. | § | |
| | § | |

## MEMORANDUM OPINION
## AND ORDER ON MOTION TO DISMISS

Before the court in the above-styled and numbered cause are Defendant Toyota Motor Corporation's Motion to Dismiss filed January 16, 2015 (Clerk's Doc. No. 56), Plaintiff Reactive Surfaces Ltd, LLP's Response to Defendant's Motion To Dismiss filed May 1, 2015 (Clerk's Doc. No. 67) and Defendant's Reply Brief In Support of Its Motion to Dismiss filed May 8, 2015 (Clerk's Doc. No. 72).[1]

After thorough consideration of the motion, response, reply, applicable law, and the entire case file, the court will grant Defendant's motion and dismiss Plaintiff's claims.

## I. INTRODUCTION

On October 1, 2008, Plaintiff Reactive Surfaces Ltd, LLP ("Reactive") filed with the United States Patent and Trademark Office ("PTO") United States Patent Application No. 12/243,755 in connection with its product DeGreez, "an additive to functionalize coating capable of rendering a coated surface self-degreasing." Reactive has made, used, and sold DeGreez since sometime after

---

[1] Defendant's Motion to Dismiss Plaintiff's Amended Complaint filed November 25, 2014 (Clerk's Doc. No. 39) is **DISMISSED**. The motion to dismiss currently before the court is directed to Reactive's last live complaint.

the inception of the company on April 11, 2002. Reactive filed four additional related patent applications between February 2013 and January 2014.[2]

Reactive alleges that Defendant Toyota Motor Corporation ("Toyota") owns several patents and patent applications that are similar to its own patent applications. Between November 2013 and August 2014, Reactive filed 15 "Suggestions for Declaration of Interference" with the United States Commissioner of Patents, asking the Commissioner to find that Reactive's and Toyota's patent applications claim the same inventions, and that only Reactive is entitled to patents for such inventions. It appears that the Commissioner has not ruled on the Suggestions and that Reactive's patent applications remain pending before the PTO. Nine of Toyota's 15 patent applications referenced in the complaint have been granted.[3]

Reactive brings a declaratory judgment action against Toyota, asserting claims of invalidity and noninfringement and asking the court to resolve the Suggestions for Declaration of Interference in its favor. Reactive also asserts state-law claims of tortious interference with a contract and tortious interference with a business relationship. Toyota moves to dismiss all claims for lack of subject-matter jurisdiction and also moves to dismiss all state-law claims for failure to state a claim. The motion also attacks the state-law claims as being preempted by federal law.

---

[2]   Reactive has filed five patent applications: No. 12/243,755 filed October 1, 2008; 14/093,347 filed November 29, 2013; 14/097,128 filed February 4, 2013; 14/151,455 filed January 9, 2014; 14/156,007 filed January 15, 2014.

[3]   Relevant to this case, Toyota holds nine patents: 8,394,618 granted March 12, 2013; 8,324,295 granted December 4, 2012; 9,012,196 granted April 21, 2015; 8,679,825 granted March 25, 2014; 8,361,768 granted January 29, 2013; 8,222,015 granted July 17, 2012; 8,252,571 granted August 28, 2012; 8,796,009 granted August 5, 2014; 8,911,986 granted December 16, 2014. Toyota has six patent applications pending before the PTO: 13/567,341 filed August 6, 2012; 13/229,277 filed September 9, 2011; 11/562,503 filed November 22, 2006; 14/166,376 filed January 28, 2014; 13/856,244 filed April 3, 2013; 13/529,322 filed June 21, 2012.

## II. ANALYSIS

### A. Rule 12(b)(1) motion

Toyota primarily seeks to have this case dismissed for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). When a party moves to dismiss a claim under Rule 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993). For purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true." *Id.* (internal citations omitted). The parties are permitted to use affidavits and other pleading materials to support and oppose the motion. *In re RLB Contracting, Inc.*, 773 F.3d 596, 601 (5th Cir. 2014). Furthermore, "[t]he burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it." *St. Paul Reinsurance Co., Ltd. v. Greenburg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *see also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1998). Thus, Reactive bears the burden of establishing subject-matter jurisdiction. Since Reactive is seeking declaratory judgment, a determination of whether the court has subject-matter jurisdiction rests on whether the court has declaratory-judgment jurisdiction.

The Declaratory Judgment Act and Federal Circuit law govern whether Reactive has standing to seek a declaratory judgment concerning the patents. *See* 28 U.S.C. § 2201(a); *WiAV Solutions LLC v. Motorola, Inc.*, 631 F.3d 1257, 1263 (Fed. Cir. 2010). The Act provides, in part, that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The "actual controversy" requirement under the Act is coextensive with Article III's case-or-

3

controversy requirement. *See Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)). "The requirement of an actual controversy encompasses concepts such as ripeness, standing, and the prohibition against advisory rulings." *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993); *see also Caraco Pharm. Labs., Ltd. v. Forest Labs., Inc.*, 527 F.3d 1278, 1291 (Fed. Cir. 2008).

The existence of a case or controversy is highly dependent upon the particular facts at issue. The difference between an actual controversy and an abstract question in a given case "is necessarily one of degree" and must be ascertained by examining the totality of the circumstances to determine whether there is a "substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) (quoting *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). The Federal Circuit has applied this "under all the circumstances" standard, while recognizing that a reasonable apprehension of suit is "one of many ways a patentee can satisfy the . . . all-the-circumstances test." *Caraco Pharm. Labs.*, 527 F.3d at 1291. Moreover, the Federal Circuit has held that "declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007). Therefore, the existence of an adverse patent or a subjective fear of potential legal ramifications, without more, is insufficient to invoke declaratory-judgment jurisdiction. *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329,

1339 (Fed. Cir. 2008).   Rather, a justiciable controversy requires some affirmative act by the patentee.  *Id.*

The burden of establishing jurisdiction rests with Reactive.   Thus, Reactive's conclusory assertions that "[a]n actual, substantial case or controversy exists between the parties who have adverse legal interests of sufficient immediacy and reality" do not suffice to create declaratory-judgment jurisdiction, when Toyota, as is the case here, has challenged such assertions.  Reactive does, however, assert in its response to Toyota's motion that Toyota's "inequitable conduct at the patent office constitutes an affirmative act."

Reactive directs the court to *Therasense, Inc. v. Becton, Dickinson & Co.* to support its position that inequitable conduct constitutes an affirmative action as is required to create a justiciable controversy.  649 F.3d 1276 (Fed. Cir. 2011).  However, in *Therasense*, inequitable conduct was used as a defense against an infringement action, not a declaratory-judgment action.   Although inequitable conduct is relevant to adjudicate a dispute over patents, it is not relevant to determine whether there is a justiciable dispute in the first place.  Inequitable conduct alleged as a defense to an anticipated dispute does not create declaratory-judgment jurisdiction.  *Inland Dredging v. Sanchez*, 468 F.3d 864, 866 (5th Cir. 2006); *see also Hanes Corp. v. Millard*, 531 F.2d 585, 592–93 (D. C. Cir. 1976) ("The anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure . . . [i]t deprives the plaintiff of his traditional choice of forum and timing, and it provokes a disorderly race to the courthouse.").  A declaratory claim should be dismissed if it was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction.  *See Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983); *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967).  Thus, to the extent that the inequitable conduct is

used as a defense to support Reactive's noninfringement claim, it does not give the court declaratory-judgment jurisdiction. Moreover, *Therasense*—the single case upon which Reactive relies—does not establish inequitable conduct as an affirmative action giving rise to declaratory-judgment jurisdiction.

Reactive alleges that Toyota "lied, mischaracterized its [own] patents, and misrepresented and omitted relevant prior art described in the [P]laintiff's patents and patent applications." Reactive argues that these actions satisfy the *Prasco* requirement of an affirmative action. Examples of affirmative actions include "creating a reasonable apprehension of an infringement suit," "demanding the right to royalty payments," "or creating a barrier to the regulatory approval of a product that is necessary for marketing." *Prasco*, 537 F.3d at 1339. And a defendant making an implied assertion of patent rights against the plaintiff's products constitutes an affirmative action. *Hewlett–Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1364 (Fed. Cir. 2009) ("[The defendant] took the affirmative step of twice contacting [the plaintiff] directly, making an implied assertion of its rights under the [defendant's patent] against [plaintiff's products] . . . . Therefore, we hold that there is declaratory judgment jurisdiction.")

The inequitable acts that Reactive alleges Toyota has taken are substantively different from the types of acts which have been found to be examples of "affirmative action" giving rise to declaratory-judgment jurisdiction. Reactive alleges that such conduct occured while Toyota was prosecuting its patent applications before the PTO. Toyota argues that, during prosecution, it was not attempting to invalidate Reactive's applications or even establish a conflict between the two parties' applications. Reactive itself admits that Toyota was attempting to have Toyota's own applications approved by explaining how Toyota's applications differ from Reactive's. This is different than if Toyota had attempted to have Reactive's applications rejected by explaining how the

parties' applications conflicted. Toyota has never alleged that Reactive's applications or products interfere with or potentially infringe upon Toyota's patents. The "lying" or "misrepresentation" alleged by Reactive does not create a controversy.

Reactive also argues that acts that occur before the PTO during the prosecution of patents can give rise to a justiciable controversy. Reactive argues that the Suggestions for Interference with the PTO between Reactive's and Toyota's patents therefore give rise to a justiciable controversy. However, the case Reactive uses to support its position is not analogous to the facts present here. *Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1329 (Fed. Cir. 2014). In *Danisco*, the court determined that a dispute "capable of conclusive resolution through a declaratory judgment" existed where the parties had "plainly been at war over patents . . . and [were] likely to be for the foreseeable future." *Danisco*, 744 F.3d at 1331. This finding was based on (1) "a history of patent litigation between the same parties involving related technologies, products, and patents," (2) explicit statements made by the defendant during its prosecution of the patent-at-issue that the plaintiff's patents and products infringe the claims being prosecuted and (3) administrative action taken by the defendant to attack patents owned by the plaintiffs. *Id.* No such history of litigation exists between Reactive and Toyota, and Toyota has neither made analogous statements nor taken actions to attack Reactive's patent applications. Toyota has made statements during the prosecution of its patents regarding Reactive's patent applications, but they have related to the validity of Toyota's applications rather than to the invalidity of Reactive's applications. Further, the Suggestions are not analogous to the administrative action taken in *Danisco* because the Suggestions were filed by Reactive rather than by Toyota. Reactive presents no further support of its position that a justiciable controversy exists. Although Reactive correctly states that "[t]he purpose of the Declaratory Judgment Act . .

. in patent cases is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights," there still must be an allegedly infringing party or a justiciable controversy. *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987). Reactive has not met its burden of proving that such a controversy exists. Therefore, the court will dismiss Reactive's claims for lack of subject-matter jurisdiction.

**B. Rule 12(b)(6) motion**

When a party moves to dismiss a claim under Federal Rule of Civil Procedure 12(b)(6), the movant is deemed to be challenging the plaintiff's claims for failure to state a claim upon which relief can be granted. In order to survive such an attack, a complaint must allege "more than labels and conclusions . . . a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007). In response to Toyota's motion to dismiss, Reactive merely states the elements of tortious interference with contract and then restates the elements, inserting applicable party names. Reactive repeats the tactic with its claim of tortious interference with prospective relations. Reactive relies on paragraph 22 of its First Amended Complaint to supply the necessary factual assertions. However, the only facts mentioned it paragraph 22 are that Reactive held an invitation-only auction and that a third-party, the relationship with which Reactive alleges Toyota interfered, attended. Reactive then continues to state the elements of tortious interference with prospective relations, reciting conclusions rather than facts.

Furthermore, "state tort claims against a patent holder, including tortious interference claims, based on enforcing a patent in the marketplace, are 'preempted' by federal patent laws, unless the claimant can show that the patent holder acted in 'bad faith' in the publication or enforcement of its

patent." *800 Adept, Inc. v. Murex Sec., Ltd.*, 539 F.3d 1354, 1369 (Fed. Cir. 2008). "[A] party attempting to prove bad faith on the part of a patentee enforcing its patent rights has a heavy burden to carry." *Id.* at 1370.

Reactive fails to address the clear issue of preclusion and fails to explain how Toyota has acted in bad faith. Further, Reactive does not assert that Toyota's alleged inequitable conduct constitutes bad faith. The court concludes that Reactive has failed in its burden to establish bad faith.

Additionally, the court finds no support for the position that a state-law tort claim may be based on inequitable conduct before the PTO. The Federal Circuit has found that a tort claim for intentional interference with contractual relations "is premised upon bad faith misconduct in the marketplace." *Dow Chem. Co. v. Exxon Corp.*, 139 F.3d 1470, 1477 (Fed. Cir. 1998). This tort claim can be contrasted with an abuse-of-process claim that requires bad-faith misconduct before the PTO. *Id*; *see also GFI, Inc. v. Bean Station Furniture*, 286 F.Supp.2d 663, 666 (M.D.N.C. 2003) (citing *Dow*, 139 F.3d at 1477) ("the bad faith necessary to establish a state law tort claim must occur in the marketplace, not before the PTO"). Reactive does not allege that Toyota acted in "bad faith" in asserting its patents in the marketplace. Instead, Reactive's state-law tort claims are based on allegations of Toyota "asserting its patents issued directly as a result of its wrongful conduct before the [PTO]," Toyota's "unlawful conduct before the [PTO]," and Toyota's "conduct [being] independently tortious or unlawful in view of its conduct before the [PTO]." By Reactive's own admissions, Reactive's state-law tort claims are based solely on Toyota's alleged conduct at the PTO, not in the marketplace. The court concludes that all of Reactive's state-law claims are preempted by federal law and are based on conduct for which no cause of action in tort lies. Therefore, the court will dismiss Reactive's state-law claims.

**IT IS THEREFORE ORDERED** that Defendant Toyota Motor Corporation's Motion to Dismiss (Clerk's Doc. No. 56) is **GRANTED.**

**IT IS FURTHER ORDERED** that all of Plaintiff Reactive Surfaces Ltd, LLP's claims against Toyota are **DISMISSED WITHOUT PREJUDICE**.

SIGNED this _13th_ day of August, 2015.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE